**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

SUE L. BAGLEY                                    CIVIL ACTION NO. 05-2050

VERSUS                                           JUDGE S. MAURICE HICKS, JR.

ALBERTSONS, INC.                                 MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by the defendant, Albertsons, Inc. ("Albertsons"). See Record Document 15. The plaintiff, Sue L. Bagley ("Bagley"), opposes the Motion for Summary Judgment. See Record Document 17. For the reasons set forth below, Albertsons' Motion for Summary Judgment is **GRANTED**.

**I.    FACTUAL AND PROCEDURAL HISTORY.**

On April 10, 2005, Bagley was a customer on the premises of the Albertsons grocery store located at 9301 Mansfield Road, Shreveport, Louisiana. See Record Document 1, ¶ 2. Bagley was pushing her shopping buggy down an aisle and slipped on a clear, slippery substance on the floor. See id., ¶¶ 3-4. Bagley alleges personal injuries as a result of this slip and fall.

Bagley had been shopping for approximately 30 to 40 minutes prior to falling. See Record Document 17, Exhibit B (Affidavit of Sue Bagley). Bagley was unaware of any substance on the floor before slipping and falling. See Bagley's 6/15/05 Letter to Albertsons, ¶ 8.[1] Bagley became aware of the substance on the floor only after her fall. See id. Bagley does not know how the substance got on the floor, who put the substance on the floor, or how long the substance had been on the floor prior to her falling. See

---

[1] Bagley's 6/15/05 Letter to Albertsons is attached to her deposition as Exhibit 3.

Record Document 15, Exhibit A (Deposition of Sue Bagley) at p. 54; see also Bagley's 6/15/05 Letter to Albertsons, ¶ 9. Bagley did recall that the size of the substance she fell on was the size of a dinner plate. See Record Document 15, Exhibit A at pp. 35-36. Bagley also stated that after falling, the "greasy substance" was on her pants. See id. at p. 35.

Daryl Berry ("Berry") was also a customer at Albertsons on April 10, 2005. He did not see Bagley fall, but came to her aid after the fall. Berry stated that he did not have any knowledge about how the substance got on the floor, who put the substance on the floor, or how long the substance had been on the floor. See Record Document 15, Exhibit A (Deposition of Daryl Berry) at pp. 35-36. Berry also recounted that as he started walking towards Bagley, he began to slide on the clear substance on the floor. See id. at pp. 25, 39. Berry

Bobby Ballew ("Ballew"), the Albertsons store manager who came to the scene of the fall, believed that the substance on the floor was chicken blood or meat blood that had leaked from a package in another customer's shopping buggy. See Record Document 17, Exhibit D (Deposition of Bobby Ballew) at p. 29. However, Ballew specifically stated that he was not sure what the substance actually was. See id.

The Albertsons in question closed in October 2005. After the closure, records from the store were shipped to the home office. Albertsons has not been able to locate video or sweep logs for the time period of April 2005. See Record Document 15, Exhibit C (Albertsons Answers to First Set of Interrogatories and Request for Production of Documents). Bagley has stated that she did not see any Albertsons' employee sweeping or inspecting the aisles prior to her fall. See Record Document 17, Exhibit B.

Plaintiff filed suit against Albertsons on November 7, 2005 in the First Judicial District Court in and for the Parish of Caddo. See Record Document 1. Subsequently, on November 30, 2005, Albertsons filed notice of removal and this case was removed on December 2, 2005. See Record Documents 4 & 8. On May 31, 2006, Albertsons filed the instant Motion for Summary Judgment, seeking dismissal of all of Bagley's claims. See Record Document 15.

**II.     LAW AND ANALYSIS.**

    **A.     Summary Judgment Standard.**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. See Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. See Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id., 477 U.S. at 248, 106 S. Ct. at 2510.

With these principles in mind, we now turn to a review of the claims at issue.

## B. Negligence Analysis under Louisiana Revised Statute 9:2800.6.

Louisiana Revised Statute 9:2800.6 governs this case, as it is a negligence action against a merchant for damages resulting from injuries sustained in a slip and fall accident. See Kennedy v. Wal-Mart Stores, Inc., 98-C-1939 (La. 4/13/99), 733 So.2d 1188. Under section 2800.6(A), a merchant owes a duty to persons who use its premises to exercise reasonable care to keep its aisles, passageways, and floors in a reasonably safe condition. The duty includes a reasonable effort to keep the premises free of any hazardous conditions that reasonably might give rise to damages. See id.

Section 2800.6(B) sets forth the plaintiff's burden of proof "in a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises." La. R.S. 9:2800.6(B). In such cases, "the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care."

La. R.S. 9:2800.6(B). With respect to the second element above, i.e., whether the merchant had actual or constructive notice of the condition which allegedly caused the slip and fall, the definitions section of La. R.S. 9:2800.6 provides guidance:

> (C)(1) "Constructive notice" means the claimant has proven that the

> condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition existed does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

La. R.S. 9:2800.6(C)(1).

In Kennedy, the Louisiana Supreme Court stated that the phrase "such a period of time," as used in section 2800.6(C)(1), constitutes a temporal element that must be shown by a plaintiff in a slip and fall case. See Kennedy, 733 So.2d at 1190. Section 2800.6 does not allow for the inference of constructive notice absent some showing of this temporal element. See id. (citing White v. Wal-Mart Stores, Inc., 97-0393 (La. 9/9/97), 699 So.2d 1081). A plaintiff must make a positive showing of the existence of the condition prior to the fall. See id. The merchant who is sued, on the other hand, is not required to make a positive showing of the absence of the existence of the condition prior to the fall. See id.

Although there is no bright line time period relative to the duration of the condition, there is imposed upon the plaintiff "a prerequisite showing of some time period." Kennedy, 733 So.2d at 1190-91. The time period need not be specific in minutes or hours. However, if a plaintiff merely shows that the condition existed, without any additional showing that it existed for "some" period of time, she has not satisfied her burden of proving constructive notice. See id.

In Kennedy, the Louisiana Supreme Court reversed the judgments of both the trial court and Court of Appeal of Louisiana, Third Circuit that had been in favor of the plaintiff. The Kennedy plaintiff was in a Wal-Mart store and allegedly slipped in what appeared to

be a puddle of water. At the time of his fall, the plaintiff was within three or four feet of the checkout lanes. He argued, and the lower courts agreed, that Wal-Mart had constructive notice of the puddle because it was raining and the water was on the floor just a few feet from the customer service podium. The Louisiana Supreme Court disagreed, noting that "plaintiff presented absolutely no evidence as to the length of time the puddle was on the floor before his accident." Kennedy, 733 So.2d at 1191. He therefore did not carry his burden under section 2800.6 of proving Wal-Mart's constructive knowledge of the condition.

### C. Application of Negligence Principles under Louisiana Revised Statute 9:2800.6 to the Instant Matter.

For purposes of this Memorandum Ruling, this Court will assume that Bagley has met her burden of proof as to section 2800.6(B)(1), that the condition in the instant matter, i.e., the clear, slippery substance on the floor, presented an unreasonable risk of harm to her and that risk of harm was reasonably foreseeable. Thus, the Court will now proceed to the second element of section 2800.6(B)(2), whether Albertsons either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

The Court finds that Bagley has not proven with competent summary judgment that Albertsons "***created*** . . . the condition which caused the damage" under section 2800.6(B)(2) (emphasis added). Bagley's opposition brief stated:

> On April 10, 2005, Bagley slipped and fell on what was ***more probably than not*** a chicken or other meat effluence and greasy blood mixture . . . . There is clear evidence supporting ***the reasonable and most probably inference*** that the unreasonably dangerous condition was created by Albertsons' employees who either failed to properly package the meat or who failed to

> prevent the leak either through lack of established or adequately enforced procedures for checking chicken and other meat packages for leaks or excess fluids.

Record Document 17 at 1 (emphasis added). Bagley also supports her argument that Albertsons "created" the unreasonable risk of harm with the deposition testimony of Ballew and Robert Pierce, the store director, regarding their beliefs as to what the substance on the floor was and the meat department's procedures for packaging and inspecting chicken and other meat. See id. at 6-11. Yet, Ballew and Pierce provide nothing more than speculation and their own beliefs as to what the substance on the floor was and how it got there. Simply put, Bagley's "more probably than not" and "the reasonable and most probable inference" statements in her opposition brief and Ballew's and Pierce's beliefs do not provide competent summary judgment evidence that Albertsons created the unreasonable risk of harm in this case. See Robinson v. Brookshires #26, No. 33,713 (La. App. 2d Cir. 8/25/00), 769 So.2d 639 (stating that "to avoid a summary judgment motion mere speculation or suggestion is not enough to meet the stringent burden imposed upon a plaintiff by La. R.S. 9:2800.6."); Little, 37 F. 3d at 1075 (stating that the non-movant cannot satisfy its burden with "some metaphysical doubt as to the material fact" or with "conclusory allegations" or "unsubstantiated assertions").

Bagley also relies on Marshall v. A & P Food Co. of Tallulah, 587 So.2d 183 (La. App. 2d Cir. 1991), in support of her argument that Albertsons created the unreasonable risk of harm in this case. However, as noted by Albertsons, this Court finds that Marshall is distinguishable both legally and factually from the instant case. Marshall was decided in 1991 and, at that time, Louisiana law under section 2800.6(B) required that the plaintiff first prove that he suffered damages due to an accident which was caused by a hazardous

condition on the merchant's premises and then the burden of proof shifted to the merchant to present evidence exculpating himself from the presumption of negligence. See Marshall, 587 So.2d at 107. In Marshall, the merchant failed to present any evidence that its meat market personnel were responsible neither for creating the actual hazard nor for failing to take reasonable measures to prevent it. See id. at 109. Based on this, the court stated:

> If [the merchant] actually had any safety measure which would fulfill its duty to exercise reasonable care to avoid this risk, it declined to share this information with the court. The court was thus not clearly wrong in finding that [the merchant] failed to exculpate itself from the presumption that it was negligent.

Id. Further, in Marshall, there was no doubt that the plaintiff slipped and fell in a puddle of chicken blood and water that had leaked from a plastic bag in his own shopping cart onto the grocery floor. See id. at 106.

In the instant case, the burden of proof will not shift to Albertsons to exculpate itself from the presumption of negligence, as the current language of section 2800.6(B) and the jurisprudence related thereto require that the plaintiff prove all elements of her claim. Albertsons has also presented evidence regarding meat packaging procedures. For instance, Pierce testified in his deposition that Albertsons' employees do not put out pre-packaged chicken if the cellophane wrapper is torn; that if the plastic is torn, employees take off the plastic and re-wrap the chicken; that there is an inspection procedure in place for detecting leaks and tears in meat packaging; and that employees are specially trained on how to package meat. See Record Document 17, Exhibit E at pp. 38-41, 44. Notwithstanding, the Court notes that these practices and procedures are really relevant to section 2800.6(B)(3), whether the merchant failed to exercise reasonable care, and not

the issue of whether Albertsons' created the unreasonable risk of harm.

The most important distinction this Court draws between <u>Marshall</u> and the instant matter is that there is no evidence in this case that the substance on the floor was, in fact, chicken or other meat effluence and greasy blood mixture. Simply put, there is no competent summary judgment evidence at all as to what the substance on the floor was and/or where it came from, as even Bagley herself relies on "more probably than not" and "the reasonable and most probable inference" statements and Ballew's and Pierce's beliefs to prove that Albertsons created the unreasonable risk of harm. Bagley cannot rely on <u>Marshall</u>, a case that is distinguishable both factually and legally from the instant matter, for the principle that this Court should allow the inference that Albertsons created the unreasonable risk of harm in this case based on nothing more than personal beliefs and mere speculation. <u>See</u> <u>Allen v. Wal-Mart Stores, Inc.</u>, 37,352 (La.App. 2 Cir. 6/25/03), 850 So.2d 895, 899 (stating "[w]ithout some other evidence as to the origin or state of the spill, the inference [the plaintiff] is asking the court to draw is merely one possibility which is no more likely than any other potential scenario.").

Because of its finding that Albertsons did not create the unreasonable risk of harm the Court now moves to the determination of whether Albertsons had actual or constructive notice of the condition which caused the damage, prior to the occurrence. Bagley does not contend, nor does the evidence support, that Albertsons had actual notice of the clear, slippery substance on the floor prior to the slip and fall. Thus, this case turns on the issue of constructive notice, <u>i.e.</u>, the temporal element of section 2800.6(B).

To satisfy the temporal element and survive summary judgment, Bagley must "come forward with positive evidence showing that the damage causing condition existed for some

period of time and that such time was sufficient to place [Albertsons] on notice of its existence." Jones v. Brookshire Grocery Co., 37,117 (La.App. 2 Cir. 5/14/03), 847 So.2d 43, 49. If Bagley fails to demonstrate the temporal element, this Court cannot infer constructive knowledge on the part of Albertsons. See id. Again, "[w]hile there is no bright line time period, [Bagley] must show that the condition existed for 'such a period of time.'" Id.; see also Robinson v. Brookshires #26, 33,713 (La.App. 2 Cir. 8/25/00), 769 So.2d 639, 642 ("Some positive evidence is required of how long the condition existed prior to the fall.").

Here, Bagley has admitted that she does not know how the substance got on the floor, who put the substance on the floor, and/or how long the substance had been there. See Record Document 15, Exhibit A at 54. Bagley's admissions are particularly relevant in light of the following requirement:

> La. R.S. 9:2800.6 does not allow for the inference of constructive notice absent some showing of this temporal element. Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. To avoid a summary judgment motion, mere speculation or suggestion is not enough to meet the stringent burden imposed upon a plaintiff by La. R.S. 9:2800.6.

Allen, 850 So.2d at 898 (internal citation omitted). As evidenced by her own statements, Bagley has failed to provide evidence that the condition existed "for some time before the fall."

Bagley did submit an affidavit stating that she had been shopping for approximately 30 to 40 minutes prior to her fall and that during that period of time she did not see any

employee sweeping or inspecting the aisles. See Record Document 17, Exhibit B. She also recalled that the size of the substance she fell on was the size of a dinner plate. See Record Document 15, Exhibit A at pp. 35-36. With these recollections as her only evidence as to how long the substance *might* have been on the floor, Bagley seems to attempt to satisfy the temporal element by inference. Her statement that she saw no inspections does not establish that the substance had been on the floor "for some time." Further, she has not presented evidence that the substance on the floor was the type of substance or liquid that spread slowly or that the substance on the floor was originally a small puddle that gradually expanded; thus, her argument is not persuasive under the reasoning of Howard v. Family Dollar Store No. 5006, 40,282 (La.App. 2d Cir. 10/26/05), 914 So.2d 118. In Howard, the Court stated:

> [Plaintiff] did not produce any witnesses to verify that the period of time the spill existed, nor did he present any physical evidence, other than the size, to indicate that the spill had existed for any period of time. [Plaintiff] notes on appeal that he testified the puddle of liquid he slipped in was rather large, and he argues this would suggest that it was on the floor for some period of time prior to him slipping in it. However, for the same reasons set forth in Allen, we decline in the absence of additional evidence concerning the origin and mechanics of the spill to infer a correlation between the size of the spill and the length of time the spill existed prior to the incident.

Id. at 122.[2]

---

[2]Relying on persuasive, as compared to controlling, jurisprudence, Bagley argues "that an adverse inference **may** arise from the fact of missing evidence." Record Document 17 at 21 (emphasis added). Bagley seems to be arguing that the fact that the Albertsons' store in question has closed and Albertsons can not produce records from that store, including inspection records and sweep logs from April 10, 2005, results in an adverse inference as to the temporal element. The Court, agreeing with the argument presented by Albertsons in its reply brief, declines to apply such adverse inference, as the cases cited by Bagley are simply persuasive and not controlling and there is no evidence of bad faith on the part of Albertsons. See Record Document 20 at 8 n. 3.

In sum, Bagley's evidence consists only of speculation and conclusory statements. The record evinces that she has failed to satisfy her burden under La. R.S. 9:2800.6 of coming forward with positive evidence proving that the condition of the slippery substance on the floor was present for a sufficient period of time to impute constructive knowledge to Albertsons as to its existence. In the absence of probative evidence on this essential element of her claim, Albertsons' Motion for Summary Judgment must be granted. See Jones, 847 So.2d at 49 (stating that failure to prove any of the required elements of section 2800.6(B) will prove fatal to a plaintiff's claim).[3]

## III. CONCLUSION.

Based on the foregoing analysis, Albertsons' Motion for Summary Judgment (Record Document 15) is **GRANTED**. All claims by the plaintiff are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 20th day of July, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[3] Because Bagley can not meet her burden of proof as to section 2800.6(B)(2)'s temporal element requirement, the Court does not reach the issue of whether Albertsons failed to exercise reasonable care under section 2800.6(B)(3).